586 So.2d 908 (1991)
ALABAMA ENVIRONMENTAL MANAGEMENT COMMISSION and Alabama Department of Environmental Management
v.
FISHER INDUSTRIAL SERVICE, INC.
Civ. 7837, 7837-A.
Court of Civil Appeals of Alabama.
April 26, 1991.
Rehearing Denied July 5, 1991.
*909 William R. Willard, Gadsden, for appellant Alabama Environmental Management Com'n.
Ronald W. Farley, Montgomery, for appellant Alabama Dept. of Environmental Management.
H. Thomas Wells, Jr., Alfred F. Smith, Jr. and J. Alan Truitt of Maynard, Cooper, Frierson & Gale, Birmingham, for Fisher Indus. Service, Inc.
RUSSELL, Judge.
On April 11, 1988, the Alabama Department of Environmental Management (ADEM) issued an administrative order assessing penalties against Fisher Industrial Services, Inc. (Fisher). Fisher sought a hearing before the Alabama Environmental Management Commission (Commission) pursuant to Ala.Code 1975, § 22-22A-7(c)(1). The hearing officer, who was appointed, issued an opinion, including findings of fact and conclusions of law, which recommended substantially reducing the penalties imposed by ADEM. The Commission then affirmed the original order issued by ADEM, and the order of the Commission subsequently was reversed by the trial court. ADEM and the Commission appeal. We reverse and remand.
The dispositive issue is whether the trial court erred in vacating the Commission's order and reinstating the hearing officer's findings of fact and conclusions of law.
At the outset we note that, in determining the standard for judicial review in this case, we look to the controlling statutes, which are Ala.Code 1975, §§ 41-22-27(f) and 22-22A-7(c)(6). Section 41-22-27(f), which took effect with regard to ADEM on October 1, 1986, provides, in pertinent part, as follows:
"Except as provided in subdivision (6) of subsection (c) of section 22-22A-7, judicial review of any order of the environmental management commission modifying, approving or disapproving an administrative action of the Alabama department of environmental management shall be in accordance with the provisions for review of final agency decisions of contested cases in sections 41-22-20 and 41-22-21."
Section 22-22A-7(c)(6) provides as follows:
"(6) Any order of the environmental management commission made pursuant to the above procedure, modifying, approving or disapproving the department's administrative action, constitutes a final action of the department and is appealable to the Montgomery county circuit court or the circuit court in which the applicant does business or resides for judicial review on the administrative record provided that such appeal is filed within 30 days after issuance of such order."
Therefore, judicial review of an order of the Commission will be in accordance with § 22-22A-7(c)(6), if the order was entered pursuant to the procedures in § 22-22A-7(c). Ex parte Baldwin County Commission, 526 So.2d 564 (Ala.1988). In the present case the order was entered in accordance with § 22-22A-7(c); therefore, judicial review of the Commission's decision *910 is exempted from the application of § 41-22-20, which provides for judicial review of agency orders under the Alabama Administrative Procedure Act (AAPA). See Dawson v. Alabama Dep't of Environmental Management, 529 So.2d 1012 (Ala.Civ.App. 1988). Judicial review instead will be that which arises under certiorari. Id.
Review under certiorari is essentially the same as that under the AAPA. Thompson v. Alabama Department of Mental Health, 477 So.2d 427 (Ala.Civ.App.1985).
"Under this standard of review, the circuit court should affirm the decision of the [Commission] unless its findings and conclusions are contrary to the uncontradicted evidence or it has improperly applied those findings viewed in a legal sense.
"If there is any evidence to sustain the [Commission's] decision, this court must affirm. It may not assess the truthfulness of conflicting testimony or substitute its judgment for that of the [Commission]."
Id. at 429 (citations omitted).
In its order the trial court stated that the Commission rejected its hearing officer's recommendations without giving any reasons. Without stating any other basis, the trial court then reversed the decision of the Commission and reinstated the findings and recommendations of the hearing officer. As noted above, this is not the standard for reversal. It is, rather, whether there is any evidence to support the Commission's decision.
Additionally, we note that, although the Commission may delegate the power to hear appeals to a hearing officer, the hearing shall be conducted in accordance with rules and regulations established by the Commission, and the hearing officer's findings of fact, conclusions of law, and recommendations shall be presented to the Commission for its final decision. Ala.Code 1975, § 22-22A-7(b)(1). It is the Commission that issues the appropriate order modifying, approving, or disapproving ADEM's administrative action. § 22-22A-7(c)(3). The hearing officer does not have co-equal statutory authority with the Commission, and the Commission may reject his findings even though not clearly erroneous, if the other evidence provides sufficient support for its decision. State Department of Corrections v. Cooke, 530 So.2d 839 (Ala.Civ. App.1988); Thompson, 477 So.2d 427.
The record reveals that Fisher operates a hazardous waste fuel blending facility located in Glencoe, Alabama, operating under an interim status permit and authorized to store hazardous waste in tanks and in drums. It contracts with generators of waste to store the waste and ultimately to dispose of it. The drums of waste are emptied into a "compatibility vat," and the liquids are separated from the solids. A hazardous waste fuel is then blended to specifications and shipped to an industrial furnace for consumption as a hazardous waste fuel. The solids remaining are redrummed, stored, and disposed of. These activities are subject to regulation by ADEM. Ala.Code 1975, § 22-30-4(a).
ADEM's administrative order issued on April 11, 1988, indicates that, prior to issuing the order to Fisher, there were a number of inspections by ADEM which resulted in notices of violations being issued to Fisher. The violations which are pertinent to this case were as follows: (1) from September 20, 1986, to February 9, 1988, failure to provide liability insurance for sudden accidental occurrences; (2) from October 14, 1987, to February 22, 1988, storage of containers of hazardous waste in excess of the amount allowed (23,650 gallons were stored and the permit application listed 16,500 gallons); (3) from April 30, 1987, to February 9, 1988, failure to calculate properly Fisher's cost closure estimate; and (4) failure to develop properly and to follow the provisions of its waste analysis plan. In addition to ordering the immediate correction of these violations, ADEM ordered that Fisher pay civil penalties in the following amounts: (1) $17,175 for storing hazardous waste in excess amounts, including storage in areas required to be reserved for aisle space; (2) $28,000 for failure to provide liability insurance; (3) $598 for failure to properly calculate the closure cost estimate, and (4) $15,000 for failure to properly *911 develop and implement a waste analysis plan.
There is no dispute concerning the facts that there was excess hazardous waste storage and that there was no liability insurance coverage during the times cited by ADEM. However, the hearing officer concluded that the penalty relating to excess storage should be reduced from $17,175 to $9,000 and that the penalty regarding the insurance coverage should be reduced from $28,000 to $5,000. The hearing officer concluded that the regulation regarding the waste analysis plan required inspection only and not analysis and that Fisher should not be penalized for concluding that analysis could be discretionary in the plan. He recommended that the $15,000 penalty be rescinded. As to the closure cost estimate issue, the hearing officer upheld the $598 penalty for violation of the closure cost estimate. This penalty was also affirmed by the trial court, has not been appealed by Fisher, and, therefore, is not before this court.
After the Commission members studied the record on their own, the Commission met on two separate occasions prior to issuing its order. The hearing officer appeared at the first hearing and was questioned about his recommendations. Six Commission members signed the Commission's order, which included findings of fact in support of ADEM's administrative action and reinstated the administrative action of ADEM.
Since there was no dispute as to most of the violations, but rather as to the amount of the penalties, we now must determine whether there was any evidence to support the Commission's decision to reinstate the penalties set by ADEM.
We note that § 22-22A-5(18)(c), Ala.Code 1975, provides the criteria for determining the amount of penalties as follows: "c. Any civil penalty assessed or recovered under paragraph a. or b. of this subdivision shall not be less that $100.00 or exceed $25,000.00 for each violation, provided however, that the total penalty assessed in an order issued by the department under paragraph a. of this subdivision shall not exceed $250,000.00. Each day such violation continues shall constitute a separate violation for purposes of this subdivision. In determining the amount of any penalty, consideration shall be given to the seriousness of the violation, including any irreparable harm to the environment and any threat to the health or safety of the public; the standard of care manifested by such person; the economic benefit which delayed compliance may confer upon such person; the nature, extent and degree of success of such person's efforts to minimize or mitigate the effects of such violation upon the environment; such person's history of previous violations; and the ability of such person to pay such penalty."

Lack of Liability Insurance
The evidence is undisputed that Fisher did not have liability insurance for the period cited. Fisher claimed, and the hearing officer stated in his findings, that there was no insurance due to a crisis in the insurance industry. However, there was evidence, based on a risk-assessment that was necessarily performed prior to the obtaining of insurance, that there were problems with Fisher's operation, including the analysis of incoming waste (or lack of proper analysis) and improper drum storage practices. Following the risk-assessment report, on September 29, 1987, insurance coverage was denied due to problems existing at Fisher. In spite of further citation by ADEM for lack of insurance coverage, Fisher did not apply for another risk-assessment until April 1988.
A representative of ADEM testified that failure to have insurance is a major deviation from the rules and that there is major potential for harm. There had been no insurance in place for over a year; therefore, there was no shield for third parties who would have been injured by an occurrence such as a spill. ADEM also chose the lower end of the range from the "penalty matrix" because Fisher had made some attempt to obtain insurance coverage. ADEM also reduced the penalty ten percent for the same reason. In addition, the *912 penalty was also calculated considering the economic benefit. The range of insurance premiums was determined to be from $10,000 to $100,000. In determining the penalty, ADEM only used the $10,000 insurance figure as the amount of economic benefit.
Therefore, we find that there is ample evidence to support the Commission's decision to reinstate in full the penalty as to this violation assessed by ADEM.

Excess Waste Storage
There is no dispute that Fisher violated the storage capacity allowed. Additionally, the risk assessment report stated that there were unstable storage conditions which impeded inspections of the area and limited the ability to respond to spills or leaks. Fisher claims that this excess storage was due to circumstances beyond its control in that there were unfortunate dealings with a broker who failed to remit money to Fisher and that the extra drums accumulated due to cash flow problems. The hearing officer found that Fisher did not demonstrate an intentional or flagrant violation, but that the broker's withholding of payment caused the excess accumulation. He also found that there was no economic benefit from the excess storage and that there was no history of violations.
However, intention is not one of the statutory factors listed, and the evidence clearly indicates that there had been previous warnings to Fisher regarding the excess storage. Although Fisher may have encountered some unexpected problems, it still bears the burden of following the regulations established to ensure the "safe management of hazardous wastes." § 22-30-2, Ala.Code 1975.
Here, we also find that there was substantial evidence to support the Commission's reinstatement in full of the penalty assessed as to this violation in ADEM's order.

Waste Analysis Plan
ADEM's finding that Fisher failed to adequately develop and implement a waste analysis plan and the penalty for that failure was upheld by the Commission, which stated that the penalty was neither arbitrary nor unreasonable.
The hearing officer concluded that the regulations required inspection only and that there should be no penalty. Regulations require that Fisher must inspect and, if necessary, analyze each hazardous waste movement received at the facility to determine whether it matches the identity of the waste on the accompanying manifest. In addition, the waste analysis plan must specify the parameters for which each hazardous waste will be analyzed. However, the evidence indicates that this was not sufficiently accomplished in the plan and that inspectors need these parameters, as the document is used to ensure that the waste streams are being properly evaluated. The evidence additionally indicates that Fisher did not have operational the equipment needed to do some of the waste analysis and that Fisher was not doing all that was in the plan. This was also confirmed in the risk-assessment report, wherein it was stated that waste acceptance procedures were not performed in accordance with Fisher's waste analysis plan. Fisher had previously been cited for these deficiencies but had not corrected them.
Therefore, we find that there was ample evidence to support the Commission's finding that there were violations and its reinstatement of the penalty in full.
Based on the above, we find that a review of the evidence reveals that there was ample evidence supporting the Commission's order; therefore, we cannot say that its findings and conclusions are contrary to the evidence or that it has improperly applied those findings.
The judgment is due to be reversed and the cause remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.

ON APPLICATION FOR REHEARING
RUSSELL, Judge.
On application for rehearing Fisher contends that this court applied the wrong *913 standard for review, wherein we quoted from Thompson v. Alabama Department of Mental Health, 477 So.2d 427 (Ala.Civ. App.1985), and used the term "any evidence." Fisher cites Ex parte Fowl River Protective Ass'n, Inc., 572 So.2d 446 (Ala. 1990), and Dawson v. Alabama Department of Environmental Management, 529 So.2d 1012 (Ala.Civ.App.1988), wherein the standard of review applied to decisions of the Commission was whether there was support by substantial evidence or whether the decision was arbitrary, capricious, and unreasonable. We address this point only for clarification of the current standard of review for decisions of the Commission.
As stated in our original opinion, the Commission's decision is exempt from the application of § 41-22-20, Ala.Code 1975 (Alabama Administrative Procedure Act (AAPA)), which provides standards for judicial review. Instead, judicial review will be in accordance with § 22-22A-7(c)(6).
Both Dawson and Ex parte Fowl River were initiated prior to the enactment of § 41-22-27(f), the section which exempts the Commission from judicial review under the AAPA; therefore, the AAPA was still applicable in those cases. The present case was initiated after the enactment of § 41-22-27(f); therefore, the standard enunciated in Thompson v. Alabama Department of Mental Health, 477 So.2d 427 (Ala.Civ. App.1985), applies. See Dawson, 529 So.2d 1012.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
ROBERTSON, P.J., and THIGPEN, J., concur.