Wright Brothers Construction Company, Inc. (Wright Brothers) was the site grading contractor for the Eastwood Festival Centre project in Birmingham, Alabama. As such, Wright Brothers cut and filled a portion *Page 430 
of Red Mountain in order to create a sixty-acre, level site for development. The contract provided that Wright Brothers was responsible for erosion and pollution control. Despite Wright Brothers' attempts to mitigate erosion, a considerable amount of sediment flowed from the construction site into two unnamed tributaries of Shades Creek.
The Alabama Department of Environmental Management (Department) responded to this situation by taking samples of water flowing from the site. These samples indicated that the water discharged from the site contravened state water quality criteria as set forth by the Department.
Pursuant to §§ 22-22A-1 through 22-22A-16, Code 1975, the Alabama Environmental Management Act, and §§ 22-22-1 through22-22-14, Code 1975, the Alabama Water Pollution Control Act, the Department made the following findings of fact: Wright Brothers is the construction site grading contractor at the Eastwood Festival Centre located at Township 17 South, Range 2 West, Section 27 in Jefferson County, Alabama, and, as such, is responsible for site preparation, surface grading, and storm water run-off control. Contrary to the requirements of §22-22-9(i)(3), Code 1975, Wright Brothers failed to obtain a permit prior to the discharge of pollutants into the waters of the state. An inspection conducted by the Department suggested that the discharge of substances from the construction site into two unnamed tributaries of Shades Creek may be in violation of the Department's regulations. The results of tests conducted on water samples from this inspection and several other periodic inspections revealed that the discharges from the site contained sediment, pollutants, and other wastes in violation of the Department's standards. The Department maintained that the pollutants from the Eastwood Festival Centre would probably flow into Shades Creek and, ultimately, the Cahaba River.
The Department issued a notice of violation to Wright Brothers. This notice required that Wright Brothers take certain affirmative steps to prevent future migrations of sediment from the site. The notice provided, in part, that within 14 days Wright Brothers must submit an engineering plan and proposed implementation schedule for cleaning and maintaining all of the existing sediment and storm water control structures on the site. The notice also required an engineering plan and proposed implementation schedule for the construction and installation of all necessary pollution control structures needed to prevent a discharge of waste water. The Department stated that Wright Brothers must also devise auxiliary control structures or procedures to control waste water discharges. The notice further required that Wright Brothers monitor all discharges from the construction site and submit a monitoring report to the Department within seven working days after each monitored storm event.
Two extensions were requested by Wright Brothers and granted by the Department. Despite these extensions, Wright Brothers failed to submit a satisfactory report to the Department. After the last extended deadline lapsed, Wright Brothers received a second notice of violation from the Department. This second notice required submission of the aforementioned items within two weeks. Prior to the expiration of these two weeks, Wright Brothers submitted a letter to the Department stating that it was making efforts to make the repairs as required by the notice. After an additional two weeks elapsed, Wright Brothers still had not complied with the provisions of the notice. The Department then received additional sample results from Wright Brothers which showed that unpermitted discharges continued to occur during rainfall events.
After making these findings of fact, the Department issued Administrative Order Number 89-029-WP which provided, in part, that within 14 days of receipt of this document, Wright Brothers would cease all unpermitted discharges from the site. The Department ordered Wright Brothers to submit a proposed implementation schedule for the engineering plan described in the two prior notices of violations. Wright Brothers was required to monitor on a daily *Page 431 
basis all of its discharges from the construction site. The Department also assessed a civil penalty of $21,000 against Wright Brothers. The record indicates that the Department assessed the civil penalty by first fining Wright Brothers a total of $16,700, which represented a $100 penalty for each of the 167 violations occurring as a result of the discharges from the construction site. The Department then penalized Wright Brothers an additional $4,300 in punitive damages.
After the Department rendered its decision, Wright Brothers filed an appeal to the Environmental Management Commission (Commission), a request for hearing, and a request for a stay of the Department's order. The Commission appointed a hearing officer to conduct the proceeding. Prior to the proceeding, the hearing officer held a pre-hearing conference at which both parties agreed that the hearing would encompass or consider only the validity of the $21,000 assessment made by the Department against Wright Brothers.
Prior to the hearing, Wright Brothers filed an objection and a motion to strike the Department's order and, alternatively, a demand for a jury trial. Wright Brothers claimed that the penalty entered by the Department constituted an award of punitive damages in violation of the Excessive Fines Clause of the Eighth Amendment of the United States Constitution. Wright Brothers also claimed that a lack of sufficient standards governing the imposition of a punitive damages award violated the due process clause of the Fourteenth Amendment to the United States Constitution and the due process rights guaranteed under the Alabama Constitution. Wright Brothers claimed that the administrative order rendered by the Department violates its constitutional right to a trial by jury under the United States and Alabama Constitutions. Finally, Wright Brothers claimed that allowing an administrative agency like the Department to impose a penalty or penalties is an unconstitutional delegation of power under the Alabama and United States Constitutions. After the hearing, the hearing officer overruled and denied Wright Brothers' motion.
At the conclusion of the hearing, the hearing officer made the following determinations: Wright Brothers discharged new or increased pollution into the waters of the state without a permit; Wright Brothers failed to comply with the Department's notice of violation, even after the Department granted Wright Brothers several extensions; and Wright Brothers materially violated the environmental laws of the state. In light of the evidence, the hearing officer found that the civil penalty assessed by the Department against Wright Brothers was reasonable.
The Commission subsequently entered an order in regard to this case. In its order, the Commission approved the report of the hearing officer without modification. On the same day the Commission rendered this order, Wright Brothers filed a motion to strike the Department's order because, it claimed, the imposition of numerous penalties based on a single act or occurrence violates the double jeopardy prohibition contained in both Article I, § 9, of the Alabama Constitution of 1901 and the Fifth Amendment of the United States Constitution. The Commission denied Wright Brothers' motion. Wright Brothers appealed to the circuit court.
The trial court considered the following four issues on appeal: (1) whether the Department's assessment of multiple penalties per day violated Wright Brothers' constitutional protection from double jeopardy; (2) whether Wright Brothers was entitled to a jury trial; (3) whether any of the assessed violations were erroneous on the basis that Wright Brothers had not violated the standards used by the Department; and (4) whether punitive damages were improperly imposed on Wright Brothers. After reviewing the briefs submitted by both parties, the trial court entered its order. This order stated that the Department's imposition of penalties without allowing for a jury trial did not violate the Seventh Amendment to the United States Constitution or Article I, § 11, of the Alabama Constitution, because committing the adjudication of public rights to an administrative body is not within the purview of the *Page 432 
aforementioned constitutional provisions. The order also stated that the penalty assessed by the Department did not violate the Fifth Amendment proscription against double jeopardy, because this amendment does not apply in the context of administrative proceedings. The trial court held in its order that the Department's assessment of penalties against Wright Brothers for multiple violations for a single day is impermissible pursuant to § 22-22A-5(18)(c), Code 1975. The trial court held that the Department could assess a penalty for only one violation per day. Further, the trial court held that the Department may not impose a separate penalty of a general nature in addition to penalties established for any per-day violation. The trial court then remanded the cause to the Department so that the Department could reassess the civil penalties in light of the criteria set forth in §22-22A-5(18)(c), Code 1975. The Department appealed the trial court's order concerning the imposition of multiple penalties, and Wright Brothers filed a cross-appeal concerning the remainder of the trial court's order.
We first note that "a presumption of correctness attaches to a decision of an administrative agency due to its recognized expertise in a specific, specialized area." Shell Offshore,Inc. v. Baldwin County Comm'n, 570 So.2d 698, 699
(Ala.Civ.App. 1990) (citations omitted). Accordingly, we will presume that the decisions of the Department and the Commission are correct. The standard of review applicable when a decision of the Commission is challenged is set forth in Alabama Envtl.Mgt. Comm'n v. Fisher Indus., 586 So.2d 908 (Ala.Civ.App. 1991). In Fisher, this court determined that "judicial review of an order of the Commission will be in accordance with §22-22A-7(c)(6), if the order was entered pursuant to the procedures in § 22-22A-7(c)." Fisher at 909. If the order in this case was entered into in accordance with § 22-22A-7(c), then "judicial review of the Commission's decision is exempted from the application of § 41-22-20, which provides for judicial review of agency orders under the Alabama Administrative Procedure Act. Judicial review instead will be that which arises under certiorari." Fisher at 909-910 (citation omitted). Since the order of the Commission complied with the standards of § 22-22A-7(c), the standard of review this court will utilize is as follows: "If there is any evidence to sustain the [Commission's] decision, this court must affirm. It may not assess the truthfulness of conflicting testimony or substitute its judgment for that of the [Commission]." Fisher at 910. Although the parties in this case did not petition for a writ of certiorari but instead appealed the order of the Commission to the circuit court and appealed the order of the trial court to this court, we find such error was harmless and will consider the appeal to be a petition for a writ of certiorari in order to facilitate the resolution of this case.
The Department maintains on appeal that the trial court's construction of § 22-22A-5(18)(c) is contrary to the plain meaning of that section. In considering the trial court's interpretation of this section, we first should consider the language of the statute which is, in part, as follows:
 "Any civil penalty assessed or recovered . . . shall not be less than $100 or exceed $25,000 for each violation, provided however, that the total penalty assessed in an order issued by the department . . . shall not exceed $250,000. Each day such violation continues shall constitute a separate violation. . . ."
In construing the language of this section we rely onParker v. Hilliard, 567 So.2d 1343 (Ala. 1990). Our supreme court in Parker stated that "the duty of a court is to ascertain the legislative intent from the language used in the enactment. When the statutory pronouncement is clear and not susceptible to a different interpretation, it is the paramount judicial duty of a court to abide by that clear pronouncement."Parker at 1346 (citations omitted). It is clear from the language of this section that the Department was not statutorily limited to one violation per day when it penalized Wright Brothers.
Section 22-22-9(i)(3), Code 1975, requires that "[e]very person, prior to discharging *Page 433 
any new or increased pollution into any waters of this state, shall apply to the commission in writing for a permit and must obtain such permit before discharging such pollution." Since Wright Brothers failed to obtain a permit to discharge the sediment, pollutants, and other wastes, every time discharges from the construction site resulted in new or increased pollution, Wright Brothers violated this section.
Therefore, we find that the assessment of multiple violations within a 24-hour period is not contrary to the language contained in § 22-22A-5(18)(c) or § 22-22-9(i)(3). Accordingly, the decision of the trial court regarding the prohibition of the assessment of multiple violations within a 24-hour period is due to be reversed.
The Department relies on the following portion of §22-22A-5(18)(c) to justify the additional $4,300 assessment against Wright Brothers:
 "In determining the amount of any penalty, consideration shall be given to the seriousness of the violation, including any irreparable harm to the environment and any threat to the health or safety of the public; the standard of care manifested by such person; the economic benefit which delayed compliance may confer upon such person; the nature, extent and degree of success of such person's efforts to minimize or mitigate the effects of such violation upon the environment; such person's history of previous violations; and the ability of such person to pay such penalty."
It is obvious from the language of this section that these factors were intended to provide a list of criteria for the Department to consider prior to assessing a fine or a penalty for a violation. There is nothing in the language of this section that allows for the assessment of punitive damages in addition to fines or penalties for violations. Therefore, we find that the trial court's decision not to assess an additional punitive penalty to Wright Brothers is due to be affirmed.
We now must consider the following issues raised by Wright Brothers on its cross-appeal: (1) whether the penalty assessed by the Department is violative of the Fifth Amendment's proscription against Double Jeopardy; and (2) whether Wright Brothers is entitled to a trial by jury.
Wright Brothers asks this court to apply the Double Jeopardy Clause of the Fifth Amendment to the facts of this case. In order to resolve this issue Wright Brothers asks this court to apply United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892,104 L.Ed.2d 487 (1989). The holding of the supreme court inHalper, however, is factually distinguishable from this case. In Halper, the supreme court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." Halper at 448-49, 109 S.Ct. at 1902. In this case, Wright Brothers was never subjected to criminal penalties for allowing sediment to flow from the construction site into the waters of this state. Consequently, although the Double Jeopardy Clause may apply to civil sanctions in the context of prior criminal penalties, this clause is not applicable to the facts of this case. Accordingly, we affirm the decision of the trial court which declined to utilize this clause in the context of an administrative proceeding.
With regard to the second issue, we must determine whether Wright Brothers was entitled to a trial by jury. It is well settled that the Seventh Amendment right to jury trial is not applicable to state courts. Woods v. Holy Cross Hospital,591 F.2d 1164 (5th Cir. 1979). Nevertheless, since Article I, § 11, of the Alabama Constitution is not materially different from the Seventh Amendment provision, we will discuss Tull v. U.S.,481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), which Wright Brothers relies on for the proposition that it had a constitutional right under the Seventh Amendment to a trial by jury. Under the facts of this case, Wright Brothers' reliance on Tull is misplaced. Footnote 4 of the Supreme Court's opinion in Tull *Page 434 
states that "[t]he court has also considered the practical limitations of a jury trial and its functional compatibility with proceedings outside of traditional courts of law in holding that the Seventh Amendment is not applicable to administrative proceedings." Tull at 418, 107 S.Ct. at 1835
(citations omitted). Thus, since the hearings conducted by the Department and the Commission were administrative proceedings, we find that Wright Brothers was not entitled to a trial by jury.
For the foregoing reasons, the decision of the trial court is affirmed in part; reversed in part; and remanded for a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
THIGPEN and RUSSELL, JJ., concur.