ROBERTSON, Presiding Judge.
In 1979, John H. Kuglar’s home, situated on the beach of the Fort Morgan Peninsula in Baldwin County, Alabama, was totally destroyed by a hurricane. In August 1988, Kuglar filed, with the Alabama Department of Environmental Management (ADEM), a site plan and an application for a permit to construct a house in the same location where his former house had been.
Between 1979 and 1988, ADEM promulgated regulations governing construction on the beaches in Alabama. One such regulation, adopted in 1985, established the Coastal Construction Control Line (CCCL). The CCCL is an imaginary line on Alabama beaches beyond which construction in a seaward direction is prohibited. ADEM Admin.Code R. 335-8-1-.02 and Rule 335-8-1-.16. The CCCL was developed by coastal experts to protect the fragile dune and shore areas from erosion, hurricanes, and storms; to protect the dune and beach habitat of various creatures; and to protect the occupants and dwellings along Alabama’s beaches. A variance from the CCCL is available when the CCCL would be unduly restrictive or would constitute a taking of a person’s property without just compensation. ADEM Admin.Code R. 335-8-1-.29
On August 17, 1988, ADEM and the Baldwin County Coastal Program issued a “Joint Public Notice,” giving interested persons an opportunity to provide information or make comments regarding Kuglar’s compliance with the applicable regulations. The comment period was open from August 17, 1988, through August 31,1988.
On September 2,1988, ADEM sent Kuglar a letter stating that the site plan he had submitted appeared to be incorrect and that ADEM would not be able to further process his application until it had received a revised site plan delineating the CCCL. ADEM received a revised site plan from Kuglar on October 4, 1988, showing that the house he was proposing to build would be partially located seaward beyond the CCCL.
On October 12,1988, ADEM received comments from the Baldwin County Commission on Kuglar’s application for a permit. The Baldwin County Commission stated that Kuglar’s permit was consistent with the coastal program; however, it recommended that a variance from the CCCL not be granted because the bmldable area on Kuglar’s lot, landward behind the CCCL, was greater than that of the three lots to the west of Kuglar’s lot that had been granted variances from the CCCL. On October. 18, 1988, ADEM wrote Kuglar a letter requesting that Kuglar notify it in writing whether he wished to pursue a variance to construct the house as shown on his revised site plan, or whether he wished to pursue a permit to construct his house landward behind the CCCL. On October 23, 1988, Kuglar responded, requesting that ADEM treat his application for a permit as a variance request. Kuglar specifically requested a variance of 43 feet seaward beyond the CCCL.
On December 21, 1988, ADEM denied Kuglar’s request for a variance, finding that his application failed to sufficiently demonstrate that a denial of his variance request to construct his house seaward beyond the CCCL would be unduly restrictive or would constitute a taking of the property without *811 payment of full compensation, in violation of the Alabama Constitution of 1901 and the United States Constitution. On January 13, 1989, the director of ADEM received a letter from Kuglar, dated January 9, 1989, wherein Kuglar requested that his letter be treated as a notice of appeal of ADEM’s denial of his variance request.
On February 3, 1989, ADEM filed a motion to dismiss Kuglar’s appeal to the Alabama Environmental Management Commission (Commission), alleging that Kuglar had failed to comply with ADEM’s Administrative Code rule governing appeals to the Commission. Thereafter, ADEM’s counsel sent Kuglar a copy of ADEM’s motion to dismiss his appeal, and a letter informing Kuglar that ADEM’s motion was scheduled to be heard by the Commission on February 15, 1989. On February 15, 1989, the Commission granted ADEM’s motion to dismiss, holding that Kuglar’s notice of appeal did not comply with all of the requirements of ADEM’s Administrative Code, Rules 335-2-1-04(4) and (5).
On February 17, 1989, the Commission sent Kuglar a copy of its February 15, 1989, order dismissing his appeal. That same day, the Commission received Kuglar’s response to ADEM’s motion to dismiss. Thereafter, Kuglar appealed the Commission’s dismissal of his appeal to the Baldwin County Circuit Court.
ADEM filed a motion to dismiss Kuglar’s appeal. However, after arguing its motion, ADEM represented to the trial court that it would not object to the matter being remanded to the Commission for a hearing on the merits. In June or July 1991, the trial court remanded the matter to the Commission for a hearing on the merits.
In December 1991, Ira DeMent was appointed as the Commission’s hearing officer to determine whether Kuglar’s request for a variance should be granted. On March 12, 1992, a hearing commenced before the hearing officer; however, the hearing was recessed, to allow ADEM an opportunity to respond to two new issues raised by Kuglar. Shortly thereafter, Ira DeMent was appointed as a judge of the United States District Court for the Middle District of Alabama, and Robert Segall was appointed by the Commission as its hearing officer to conclude the hearing.
On July 8,1992, the hearing officer, Segall, was presented with additional testimony and evidence. On August 3, 1992, the Commission received the hearing officer’s recommendation that Kuglar’s variance request be denied. On August 12, 1992, the Commission adopted that recommendation and upheld ADEM’s denial of Kuglar’s variance request. Kuglar filed a notice of appeal in the Baldwin County Circuit Court on September 14, 1992.
Following argument of - counsel and the submission of briefs, the trial court entered a judgment on October 7, 1994, holding that Kuglar should be granted an 18-foot variance. The trial court found that the location of Kuglar’s proposed home was in a dangerous curve; that the environment would not be damaged by the grant of a variance; that the granting of a variance “would more nearly align [Kuglar] with his neighbors to the east”; and that “because of the special and unique circumstances that apply to [Kuglar], equity favors granting [a] variance.”
ADEM appeals, raising two issues: (1) whether there is substantial evidence in the record to support the Commission’s ruling, thereby prohibiting the trial court from substituting its judgment for that of the Commission; and (2) whether the trial court’s October 7, 1994, judgment complies with § 41-22-20(k), Ala.Code 1975 (Supp.1994).
We note at the outset that “a presumption of correctness attaches to a decision of an administrative agency due to its recognized expertise in a specific area.” Alabama Dep’t of Envtl. Management v. Wright Bros. Constr. Co., 604 So.2d 429, 432 (Ala.Civ.App.1992) (quoting Shell Offshore, Inc. v. Baldwin County Comm’n, 570 So.2d 698, 699 (Ala.Civ.App.1990)). Pursuant to § 41-22-20(k), the trial court must give the Commission’s decision a presumption of correctness, and may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact. In reviewing the determination of the Commission, this court applies the same standard of review as the trial court. Dawson v. *812 Alabama Dep’t of Envtl. Management, 529 So.2d 1012 (Ala.Civ.App.1988), cert. denied, 529 So.2d 1015 (Ala.1988), overruled on other grounds by Ex parte Fowl River Protective Ass’n, 572 So.2d 446 (Ala.1990).
We first address whether there is substantial evidence in the record to support the Commission’s ruling, thereby prohibiting the trial court from substituting its judgment for that of the Commission. The decision of the Commission must be upheld unless
“substantial rights of the petitioner have been prejudiced because the [Commission’s] action is:
[[Image here]]
“(6) Clearly erroneous in view of the rehable, probative, and substantial evidence on the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”
§ 41-22-20(k), Ala.Code 1975 (Supp.1994); see Ex parte Plumbers & Steamfitters, Local 52, 622 So.2d 347 (Ala.1993).
The record reveals the following facts: Kuglar is seeking a variance in order to rebuild his home in the exact location of his previous home, which was destroyed by a hurricane; and without a variance, Kuglar’s home will be located approximately five feet from the roadway.
John Dorgan, county engineer for Baldwin County, testified that without a variance, Kuglar’s home would be built in the curve of the roadway and that its location there would create a dangerous situation. Dorgan testified that he was concerned that there would be an unreasonable danger of a collision between a vehicle and Kuglar’s home, because the curve in the roadway could not be successfully negotiated at speeds approaching 55 miles per hour. Dorgan further testified that that danger could be lessened if Kug-lar’s home was built 10 to 20 feet from the roadway. Although Victor McSwain, the transportation planning director for the City of Mobile, testified that the curve was not dangerous, he also testified that he would feel “comfortable” if Kuglar’s home was built 10 to 20 feet from the roadway.
ADEM argues that Kuglar has a “reasonable use” of his property and that a variance should be denied because Kuglar can build a 1200-square-foot home without encroaching upon the CCCL. ADEM also argues that allowing a variance in this case will jeopardize ADEM’s future enforcement of the CCCL by exposing decisions on variance requests to claims of arbitrariness.
The hearing officer found that Kuglar could build a 1200-square-foot home 20 feet from the roadway if Kuglar eliminated the proposed deck and if Kuglar moved the entrance to the home from the front to the side. The hearing officer specifically found that “locating the proposed [home] within five feet of the roadway would, indeed, create a dangerous condition which [Kuglar], can and should, avoid. The desire for a deck on one’s home in no sense can justify placing the occupants of the home or passing motorists in jeopardy.” While the hearing officer strongly suggested that Kuglar refrain from building his home closer than 20 feet from the roadway, the hearing officer refused to grant a variance.
ADEM Admin.Code R. 335-8-1-.29 provides that a variance may be granted where the applicant has demonstrated that the enforcement of the CCCL would be “unduly restrictive.” In this case, ADEM admitted that there would be no incremental damage to the environment as a result of granting Kuglar a variance. Additionally, there is evidence that the denial of a variance would either create a safety hazard to Kuglar and Kuglar’s family and guests, as well as motorists in general, or force Kuglar to eliminate his deck and alter the entrance to his home. Because the granting of a variance would not be damaging to the environment, both alternatives are “unduly restrictive” to Kuglar’s use of his property.
In Mynatt v. ADEM, Docket No. 85-27, the Commission specifically stated that it had the “responsibility to balance the competing interests that the State of Alabama has on the one hand in protecting the coastal ecosystem and the state’s shorelines, and that of the property owner on the other hand in enjoying and using his property.” The Com *813 mission went on to say that “matters such as [granting a variance] must necessarily be decided on a case-by-case basis, taking into consideration the facts and circumstances peculiar to the particular ease under consideration.”
In this case, ADEM admitted that granting a variance to Kuglar would not cause any harm to the coastal ecosystem or the state’s shorelines. Additionally, failure to grant a variance will require Kuglar either to build his home five feet from the roadway, creating a hazardous condition, or to eliminate the deck and move the entrance of the home. Accordingly, balancing the state’s interest against Kuglar’s interest in the use and enjoyment of his property, we conclude that the great weight of the evidence supports the granting of a variance to Kuglar. Therefore, we conclude that the Commission’s denial of Kuglar’s variance request was unreasonable and arbitrary and clearly erroneous, in view of the record as a whole. The trial court granted an 18-foot variance to Kuglar; this variance, in effect, allowed Kuglar to build his home 20 feet from the roadway and still include the deck and front entrance, while it also protected ADEM’s interest in maintaining the CCCL.
We next address whether the trial court’s failure to specify which § 41-22-20(k) standard it relied upon in reversing the Commission’s decision was reversible error. Section 41-22-20(1), Ala.Code 1975 (Supp.1994), states that “[u]nless the court affirms the decision of the agency, the court shall set out in writing, which writing shall become a part of the record, the reasons for its decision.” Section 41-22-20(2) does not require the trial court to specify which standard of § 41-22-20(k) it relied upon.
The trial court’s order stated that the environment would not be damaged by granting a variance, that a variance would more nearly align Kuglar with his neighbors, and that because of Kuglar’s special and unique circumstances, i.e., the dangerous curve just before his property, equity favors granting a variance. Consequently, we hold that the trial court’s order complies with § 41-22-20(2), because the trial court set out in writing the reasons for its decision.
After a careful review of the record, we hold that the Commission’s decision was unreasonable and arbitrary and clearly erroneous under the circumstances in this case. Therefore, the judgment of the trial court reversing the Commission’s decision and granting Kuglar a variance is due to be affirmed.
AFFIRMED.
THIGPEN, YATES, and MONROE, JJ., concur.
CRAWLEY, J., not sitting.