DONALDSON, Judge.
These two appeals from judgments of the Pike Circuit Court (“the trial court”) relate to the ownership, operation, and licensing of a landfill located in the City of Brundidge (“Brundidge” or “the City”), a municipality located in Pike County. Brundidge and the City of Brundidge Solid Waste Authority (“COBSWA”) appeal from a judgment of the trial court denying a complaint for declaratory relief, in which it was alleged that the Coffee County Commission violated Alabama law by improperly engaging in a “takeover” of the landfill through its alleged alter-ego organization, Brundidge Acquisitions, LLC (“BA”). Brundidge also appeals from a judgment of the trial court declining to set aside a decision made by the Alabama Environmental Management Commission (“the AEMC”), which had upheld the decision of the Adabama Department of Environmental Management (“ADEM”) to transfer the solid-waste-landfill operating permit to BA without first obtaining Brun-didge’s approval. From the record before us, the actions of the Coffee County Commission do not appear to be prohibited by current law, and, therefore, for the reasons stated herein, the judgments of the trial court are affirmed.

Facts and Procedural History

The Brundidge landfill, which is located within the Brundidge city limits, was constructed in 1991 as a municipal solid-waste landfill. Pursuant to § 22-27-48, Ala. Code 1975, a part of the Solid Wastes and Recyclable Materials Management Act, codified at § 22-27-1 et seq., Ala.Code 1975, Brundidge approved the landfill site. Brundidge also entered into a host-government agreement with a private contractor to operate the landfill. Thereafter, in 1992, ADEM issued Permit No. 55-07 to authorize the Brundidge landfill to accept solid waste. From 1992 to 2007, ownership of the landfill changed three times. Brundidge did not object to ADEM’s transfer of the permit to the new entities for any of those ownership changes.
In 2007, TransLoad America, Inc. (“TLA”), purchased the landfill. In September 2007, COBSWA, a public corporation established by Brundidge in 2003, entered into a host-government agreement with Brundidge Landfill, LLC, a subsidiary of TLA, authorizing that entity to operate the landfill and granting the City the right to collect administrative, or “tipping,” fees from the landfill operations. Brundidge also received revenue from its treatment of leachate, a liquid byproduct generated by landfills, at the City’s water-treatment facility. In 2012, TLA began to experience financial difficulty and filed for bankruptcy in the United States Bankruptcy Court for the District of New Jersey (“the bankruptcy court”), and Brun-didge Landfill, LLC, ceased operating the landfill. Thereafter, both Brundidge and the Coffee County Commission made separate offers to purchase the landfill from TLA and one of TLA’s creditors, but no sale of the landfill occurred based on those offers.
In October 2012, BA was formed. That same month, the Coffee County Commission passed two resolutions authorizing the issuance of up to $6 million of Coffee County’s debt for the purpose of purchasing the landfill. One of the resolutions stated, in part, as follows:
“WHEREAS, the County has the power to grant public funds and lend its full faith and credit under Section 94.01 of the Constitution of Alabama of 1901 (also known as Amendment 772 to the Alabama Constitution of 1901), as *801 amended, (hereinafter referred hereto as ‘Amendment 772’), which provides that a county may lend its credit to or grant any public funds or thing of value to or in aid of any private, entity in support of a valid and sufficient public purpose; and
“WHEREAS, the County has ■ determined that the increased disposal capacity provided by the Landfill will enhance economic development within the County and that the expenditure of funds for the Project will serve a valid and public purpose and is in the best interest of the County’s residents and the public; and
“WHEREAS, the County has caused to be published a notice .satisfying the requirements stated in Amendment 772, in order, to the extent Amendment 772 . may apply, to approve and authorize the use and grant of public funds for providing the assistance described herein.,.
In December 2012, BA purchased the landfill from the bankruptcy trustee for $4 million. In February 2013, the bankruptcy court approved the sale of the Brun-didge landfill and authorized the trustee to reject the previous host-government agreement between Brundidge and Brun-didge Landfill, LLC. In March 2013, ADEM approved BA’s request to transfer Permit No. 55-07 from Brundidge Landfill, LLC, to BA.
On January 21, 2013, Brundidge and COBSWA filed a declaratory-judgment action in the trial court, seeking a ruling that the Coffee County Commission lacked authority to provide funds for thé acquisition of the landfill and that BA lacked authority to lawfully operate the landfill without first entering into a host-government agreement with the City. Specifically, Brundidge and COBSWA claimed that the Coffee County Commission’s resolutions and agreements with BA violate §§ 11-3A-2(d)(6) and, ll-3A-2(e), Ala.Code 1975, which are part of the Alabama Limited Self-Governance Act, § 11-3A-1 et seq., Ala.Code 1975, and that the Coffee County Commission failed to- comply with Art.- IV, § 94.01, Ala. Const. 1901 (Off-Recomp.), also cited as Amendment No. 772.
On March 29, 2013, Brundidge also commenced an administrative proceeding with the AEMC to challenge the legality of ADEM’s transfer of the permit from Brun-didge Landfill, LLC, to BA without first seeking Brundidge’s approval pursuant to § 22-27-48(a), Ala.C'ode 1975. On’April 9, 2013, BA intervened in the administrative proceeding. AEMC denied Brundidge’s request to stay the transfer of the- permit. An administrative-law. judge (“ALJ’0 was appointed to hear the matter, and, on June 6, 2013, the ALJ conducted a hearing at which he received the testimony of witnesses and documentary evidencé. On September 24, 2013, the ALJ ruled’in favor of ADEM and made the following findings and recommendations pertinent to this appeal:
“8. ADEM’s transfer of Permit 55-07 was done without the approval of the City of Brundidge; however, that transfer does not violate Code of Alabama, 1975, § 22-27-48.
“9. Approval of the landfill was given by the City of Brundidge when Permit 55-07 was originally issued- and § 22-27-48(a) does not require that. ADEM revisit the issue of local government approval, every time-a permit is .transferred. Only on the issuance of a, new permit or a ‘modified’ permit is . the apr proval of local government revisited. Such was not required with the transfer that occurred here.
“10. The rejection of the . [host-government agreement] as referenced in the hearing and in the briefs ... occurred as a result of the actions and orders of the [the bankruptcy court]. ADEM *802 simply transferred Permit 55-07, and its actions were not the cause of the City of Brundidge’s loss of the contractual benefits it had received as a result of its earlier negotiations.
“11. The City of Brundidge will lose some of its control and benefit of the landfill because of the rejection of the [host-government agreement] as ordered by the Bankruptcy Court (conditionally done on February 19, 2013, and subsequently ordered at a time following the hearing of this matter on June 6, 2013) much like creditors lose rights and benefits every day when debtors file a petition in bankruptcy court. There is no question that people, companies and even municipalities suffer a harsh reality when they, as creditors (or in this case as a party to an executed contract), lose the benefit of their bargain because of a discharge in bankruptcy or some other actions of the Bankruptcy Court. Congress has decided that bankruptcy is an available remedy, and creditors or contractors lose as a result. That is what happened to the City of Brundidge through no fault of ADEM.
“12. The application process used herein for the transfer of this permit was not misleading to ADEM and there has been no complaint by ADEM that it was misleading.”
On October 18, 2013, AEMC entered an order adopting the ALJ’s findings and recommendations “with the exception that [AEMC] [found] that the transfer of Permit Number 55-07 was performed in a manner consistent with the promulgated rule of ADEM and consistent with applicable Alabama law....” On November 19, 2013, Brundidge appealed AEMC’s ruling to the trial court. The trial court consolidated the declaratory-judgment action with the appeal from the administrative proceeding, although it held separate hearings and issued separate judgments in the cases.
In the declaratory-judgment action, Brundidge and COBSWA filed a motion for a summary judgment and a memorandum in support thereof. In its motion for a summary judgment, Brundidge and COBSWA argued that BA was a mere “shell” entity that was controlled and managed by employees of the Coffee County Commission. Brundidge and COBSWA argued that the Coffee County Commission intended to keep the Brundidge landfill operating at a minimal level in order to direct additional waste disposal to a landfill located in Coffee County, which will generate more revenue to Coffee County through the receipt of tipping fees. The record indicates that from 2007 to 2011 the landfill collected $280,791.50 and that $18,843.89 had been dedicated to local industrial development in Brundidge. Brun-didge and COBSWA argued that the City has also lost revenue from the loss of leachate treatment. The City and COB-SWA further contended that the Coffee County Commission lacked the authority under § 94.01, Ala. Const. 1901 (Off.Re-comp.), and § 11-3A-2, Ala.Code 1975, a part of the Alabama Limited Self-Governance Act, to enter the resolutions authorizing the loan to BA. They also alleged that the Coffee County Commission formed BA solely to avoid the provisions of § 11-3A-2 in order to purchase, operate, and control the Brundidge landfill to eliminate competition for the Coffee County landfill. Brundidge and COBSWA alleged that Coffee County is generating an additional $100,000 per month from the Coffee County landfill since Brundidge Landfill, LLC, ceased operating the Brundidge landfill.
The Coffee County Commission and BA also filed separate motions for a summary judgment in the declaratory judgment ac *803 tion. The Coffee County Commission and BA argued that Brundidge and COBSWA lacked standing to challenge the expenditures of Coffee County; that the Alabama Limited Self-Governance Act is inapplicable to the Coffee County Commission because Coffee County had not ratified that act by local referendum; that that act did not prohibit Coffee County from entering the resolutions to support BA’s purchase of the landfill; that the resolutions serve a valid and sufficient public purpose under § 94.01, Ala. Const 1901 (Off.Recomp.); and that Brundidge’s declaratory-judgment action was an attempt to collaterally attack the order of the bankruptcy court approving the sale of the landfill to BA and invalidating the existing host-government agreement.
The Coffee County Commission contended that its efforts to support the reopening of the Brundidge landfill were driven, in part, by the reduction in capacity of the Coffee County landfill, which had allegedly experienced an increase in construction and demolition waste disposal generated from the cleanup from widespread and significant damage caused by tornados that had struck the area in March 2007. Testimony of Coffee County representatives indicated that, by having BA acquire and operate the Brundidge landfill, Coffee County would secure future space for disposing of construction and demolition waste and would be able to conserve space for municipal solid waste at its own landfill. Testimony further indicated that BA’s acquisition of the Brun-didge landfill would assist Coffee County in providing long-term waste-disposal services to individuals and businesses located in the area.
The trial court held a hearing on the parties’ motions for a summary judgment in the declaratory-judgment action on November 20, 2014. On the same date, the trial court held a hearing in the appeal from the administrative proceeding. On January 9, 2015, the trial court entered a judgment in the declaratory-judgment action granting the Coffee County Commission’s and BA’s motions for a- summary judgment, declaring that Brundidge and COBSWA lacked standing to sue because they are not taxpayers of Coffee County and because the injuries that they claim are not fairly traceable to the actions of either defendant. The trial court concluded:
“For the Plaintiffs to have standing to contest an expenditure of Coffee County, they would have to be taxpayers or have some other responsibility to replenish those funds. The Plaintiffs conceded that they are not taxpayers and have no other responsibility for replenishing money expended by Coffee County. In addition, the Plaintiffs’ claimed injuries are not fairly traceable to the actions of either defendant. Instead, the injuries the Plaintiffs claim are the result of the bankruptcy of the former owner of the Brundidge Landfill and the New Jersey Bankruptcy Court that presided over that bankruptcy. As a result, the Plaintiffs lack standing.”
The trial court further found that the City’s and COBSWA’s claims based on the Alabama Limited Self-Governance Act failed because Coffee County had not invoked the provisions of that act and because that act did not prohibit the actions taken by the Coffee County Commission or BA. The trial court determined that Coffee County had complied with 94.01, Ala. Const 1901 (Off.Recomp.), stating that Coffee County Commission had “presented evidence that its actions serve a sufficient public purpose and that those actions were taken to promote economic and industrial development, in Coffee County. The evidence also reflects that proper public notice was provided.... [Brundidge and *804 COBSWA] did not present evidence that sufficiently rebutted the evidence presented by [the Coffee County Commission and BA].” .
■ In the - appeal from the administrative proceeding, the trial court entered a judgment v on January 9,- 2015, affirming AEMC’s decision upholding ADEM’s decision to transfer the permit to BA on the basis that “ADEM has interpreted § 22-27-48 and its 'own regulations as not requiring local approval of a transfer of a landfill permit from one operator to another when none of the aspects of the landfill requiring local approval have changed.”
Brundidge and COBSWA filed a timely notice of appeal from the judgment in the appeal from the administrative proceeding to this court. Brundidge and COBSWA afeó filed a timely notice of appeal from the judgment in the declaratory-judgment action to the supreme court. That appeal was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code' 1975. Oral arguments of the parties in both appeals were heard on October 22, 2015. We have consolidated the appeals.

Standards of Review

Our standard of review of a summary judgment is well settled:
“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion.’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
. “ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie- showing that there is .no genuine -issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw, all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party -must present “substantial evidence” creating a genuine issue of material fact—“evidence of such weight and . quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004).”
Chancellor v. White, 34 So.3d 1270, 1273 (Ala.Civ.App.2008).
Furthermore, our standard of review of an administrative agency’s decision is equally settled:
“Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the [circuit] court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact,'except where otherwise authorized by statute. The [circuit] court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The [circuit] court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the [circuit] court ■finds that the agency action is due to be set aside or modified under standards *805 set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“(1) In -violation of constitutional or statutory provisions;
“(2) In excess of the statutory authority of the agency;
“(3) In violation of any pertinent agency rule;
“(4) Made upon unlawful procedure;
“(5) Affected by other error of law;
“(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”
Ala.Code 1975, § 41-22-20(k).
“‘[A] presumption of correctness attaches to a decision of an administrative agency due to its recognized expertise in a specific area.’ Alabama Dep’t of Envtl. Management v. Wright Bros. Constr. Co., 604 So.2d 429, 432 (Ala.Civ.App.1992) (quoting Shell Offshore, Inc. v. Baldwin County Comm’n, 570 So.2d 698, 699 (Ala.Civ.App.1990)).... In reviewing the determination of the [AEMC], this court applies the same standard of review as the trial court. Dawson v. Alabama Dep’t of Envtl. Management, 529 So.2d 1012 (Ala.Civ. App.1988), cert. denied, 529 So.2d 1015 (Ala.1988), overruled on other grounds by Ex parte Fowl River Protective Ass’n, 572 So.2d 446 (Ala.1990).”
Alabama Dep’t of Envtl. Mgmt. v. Kuglar, 668 So.2d 809, 811-12 (Ala.Civ.App.1995).

Discussion

These appeals raise the issue, of a county commission’s authority to exercise certain powers or to provide services inside the corporate limits of a municipality located in another county. Specifically, these appeals call upon this court to decide whether the Coffee County Commission has violated state law by providing funding to BA to operate a landfill within the city limits of Brundidge and without Brundidge’s approval. Additionally, this court must determine the propriety of the trial court’s judgment determining that ADEM correctly interpreted § 22-27-48, Ala.Code 1975, and its own regulations to conclude that local approval of the transfer of a solid-waste-landfill operating permit is not necessary when no aspect of the landfill requiring local approval has changed.
I. Standing
We first address the issue whether Brundidge and COBSWA have standing. “ ‘Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.’” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999) (quoting National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). Brundidge and COBSWA argue that the trial court incorrectly determined that they did not have standing.
“This Court has adopted the Lujan [v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992),] test as the means of determining standing in Alabama. See Ex parte King, 50 So.3d 1056, 1059 (Ala.2010)(‘Traditionally, Alabama courts-have focused primarily on the injury claimed by the aggrieved party to determine whether that party has standing; however, in 2003 this Court adopted the following, more precise, rule regarding standing based upon the test used by the Supreme Court of the United States: “A party establishes standing to bring a ... challenge ... when it *806 demonstrates the existence of (1) an actual, concrete and particularized ‘injury in fact’—an invasion of a legally protected interest’; (2) a ‘causal connection between the injury and the conduct complained of; and (8) a likelihood that the injury will be ‘redressed by a favorable decision.’ ” ’ (quoting Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, L.L.C., 890 So.2d 70, 74 (Ala. 2003), quoting in turn Lujan, 504 U.S. at 560-61)). See also Muhammad v. Ford, 986 So.2d 1158, 1162 (Ala.2007) (stating that, ‘[i]n [Henri-Duval ], this Court adopted a more precise rule regarding standing articulated by the United States Supreme Court’ in Lujan), Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1258, 1256 (Ala. 2004) (stating that the Court in Henri-Duval had ‘effectively restated’ the standard for standing, using the three-pronged test from Lujan).”
Ex parte Alabama Educ. Television Comm’n, 151 So.3d 283, 287 (Ala.2013).
Our supreme court has held that “ ‘it is the liability to replenish public funds that gives a taxpayer standing to sue.’ ” Jordan v. Siegelman, 949 So.2d 887, 891 (Ala.2006) (quoting Broxton v. Siegelman, 861 So.2d 376, 385 (Ala.2003)). The Coffee County Commission and BA contend that the trial court correctly determined that Brundidge and COBSWA lacked standing to challenge Coffee County’s expenditure of $4 million to aid BA in acquiring the landfill because, they argue, Brundidge and COB-SWA were unable to prove that Brundidge has a responsibility to replenish the funds of Coffee County.
We agree, however, with Brundidge and COBSWA’s assertion that the injury that they claim “is not the liability to replenish Coffee County’s treasury to which Brun-didge and [BA] claim some ownership share.” (Appellants’ brief in case no. 2140342 at 44-45). Rather, Brundidge and COBSWA’s injury arises from the Coffee County Commission’s alleged violation of Brundidge’s presumed authority under § 22-27-48(a) to manage solid waste generated within the city limits of Brundidge. Brundidge and COBSWA contend that § 22-27-48(a) vests Brundidge with the statutory right to develop a solid-waste-management plan applicable to waste generated within its city limits. § 22-27-47(a) provides, in pertinent part, as follows:
“Each county and any municipality as described below shall submit to [ADEM] ... a plan for the management of solid waste generated within its boundaries. A county’s plan shall include the municipal jurisdictions within its boundaries except that any municipality may choose to submit its own solid waste management plan intended for implementation within its city limits and thereby be excluded from its county plan. Cities which do not choose to exclude themselves from their county’s plan shall be responsible to share in the county’s costs proportionately on a per capita basis. The content of all plans shall be consistent with the requirements of this article [i.e., § 22-27-40 through § 22-27-49, Ala.Code 1975,] and every plan shall not become final until it has been officially adopted and approved pursuant to the requirements of this article. In the event a county or city does not submit a required plan or if said plan does not meet the minimum requirements set out in this article, [ADEM] shall prepare the plan which shall serve as the official county or city plan.”
Brundidge and COBSWA further contend that § 22-27-48(a) vests Brundidge with the responsibility and the authority to implement its plan for solid-waste-disposal services and activities within the Brun-didge city limits. That section provides, in part:
*807 “[T]he governing body of a county or municipality has a responsibility for and the authority to assure the proper management of solid wastes generated within its jurisdiction in accord with its solid waste management plan. A governing body may assign territories and approve or disapprove dissposal sites in its jurisdiction in accord with the plan approved for its jurisdiction. Such approval or disapproval of services or activities described in the local plan shall be in addition to any other approvals required from other regulatory authorities and shall be made prior to any other approvals necessary for the provision of such services, the development of a proposed facility or the modification of permits for existing facilities.”
In Alabama Disposal Solutions-Landfill, L.L.C. v. Town of Lowndesboro, 837 So.2d 292 (Ala.Civ.App.2002), the Lowndes County Commission proposed the establishment of a landfill, 20 acres of which was located within the police jurisdiction of the Town of Lowndesboro (“Lowndes-boro”). The Lowndes County Commission adopted a resolution granting host-government approval for a landfill and entered into a contract with Alabama Disposal Solutions-Landfill, L.L.C. (“ADS”), to operate the landfill. Subsequently, Lowndes-boro enacted Ordinance 98-1, prohibiting landfills within its corporate city limits and within its police jurisdiction. ADS filed an application with ADEM for a solid-waste-landfill operating permit, and ADEM issued ADS the permit. In determining that the parties had presented an issue ripe for judicial review, i.e., a judicable controversy,[1] this court concluded:
“At the time this action was filed, the County had the right, pursuant to § 22-27-47(a), to oversee the management of solid-waste disposal within the County. The County had a solid-waste plan in place; Lowndesboro did not. The County also had a contract with ADS and had the right to receive the benefits of that contract, although the benefits were contingent on issuance of the proper permits. The ordinance rendered those rights uncertain, causing the issue of the validity of that ordinance to be ripe for review under § 6-6-223. Lowndesboro’s enactment of Ordinance 98-1 created a conflict between the County and Lowndesboro over who had authority to manage solid-waste disposal in the police jurisdiction of Lowndes-boro. Here, the ordinance declares invalid the very activity authorized by both the State and the County in which the municipality is located.
“Legal issues relating to host-government approval may be ripe for review, regardless of whether all necessary permits have been obtained. In Fitzjarrald v. City of Huntsville, 597 So.2d 1378 (Ala.Civ.App.1992), citizens sought a declaratory judgment and preliminary and permanent injunctions preventing the City of Huntsville and its solid-waste-disposal authority from locating solid-waste landfills in a portion of Limestone County located within the city limits of Huntsville. The circuit court concluded that because ADEM had issued no permit to locate a solid-waste landfill in Limestone County, ‘“the issue [was] moot and premature and a justiciable controversy [did] not exist at the present time.”’ 597 So.2d at 1379. This court reversed the judgment of the cir *808 cuit court and held that the complaint stated justiciable claims that would entitle the citizens to equitable relief. In doing so, this court noted: ‘It does not matter that ADEM has not issued a permit yet. ADEM’s decision is separate and apart from the city’s decision.’ 597 So.2d at 1380.
“We conclude that ADS and the County presented a justiciable controversy ripe for review. The complaint filed by ADS and the County stated claims that, if proven, would entitle them to equitable relief; thus, a justiciable controversy existed at the time the complaint was filed. See Stringfellow v. State Farm Life Ins. Co., 743 So.2d 439, 441 (Ala.1999); Save Our Streams, Inc. v. Pegues, 541 So.2d 546, 548-49 (Ala.Civ.App.1988) (stating that a complaint for declaratory judgment is ripe for review if a justiciable controversy exists at the time the complaint is filed), cert. denied, 541 So.2d 549 (Ala.1989).”
Lowndesboro, 837 So.2d at 298-99 (footnote omitted).
Similarly, -ye conclude that, in the present case, Brundidge and COBSWA have the responsibility and the authority, pursuant to § 22-27-48(a), “to assure the proper management of solid wastes generated within [the City’s] jurisdiction in accord with its solid waste management plan.” The Coffee County Commission’s resolutions to support BA’s goal of acquiring the landfill and BA’s subsequent actions to acquire the landfill have created a genuine conflict between the parties. Brundidge alleges that the Coffee County Commission and BA have interfered with its statutory obligations. Furthermore, Brundidge and COBSWA allege that BA’s acquisition of the landfill will result in the loss of tipping fees payable to Brundidge, as well as revenue from the treatment of leachate. Brundidge and COBSWA sought a declaratory judgment precluding BA from operating the Brundidge landfill without first entering into a host-government agreement with Brundidge and to invalidate the resolutions entered by the Coffee County Commission, We, therefore, conclude that Brundidge and COBSWA’s complaint presents a justiciable controversy that is ripe for review and that Brundidge and COBSWA have standing under § 22-27-48(a) to seek declaratory relief.
Nonetheless, this court “may affirm a correct judgment for any reason, even if the trial court did not rely on that reason in reaching its judgment.” Chadwick Timber Co. v. Philon, 10 So.3d 1014, 1021 (Ala.Civ.App.2007). Therefore, we must address Brundidge and COBSWA’s additional arguments raised on appeal, including whether the Coffee County Commission’s and BA’s purchase and operation of the landfill inside the Brundidge city limits without approval from Brundidge violates Alabama law.
II. Alleged Violation of Alabama Law
Brundidge and COBSWA contend that provisions of the Solid Wastes and Recyclable Materials Management Act, specifically Ala.Code 1975, § 22-27-3(a)(4), § 22-27-5(a), § 22-27-47(a), and § 22-27-48(a), provide local governments with authority to manage solid waste within their own boundaries.[2] They contend that the Cof *809 fee County Commission and BA have failed to comply with this authority by not first obtaining Brundidge’s approval before BA acquired and began operating the Brundidge landfill.
Because we are called upon to examine the provisions of the Solid Wastes and Recyclable Materials Management Act, we are required to analyze the language of a variety of statutes.
“ ‘[Pjrinciples of statutory construction instruct [a court] to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.’ Ex parte Pratt, 815 So.2d 582, 535 (Ala.2001)(citing Ex parte Alabama Great Southern R.R. & Norfolk Southern Ry., 788 So.2d 886, 889 (Ala.2000), quoting in turn Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998)).
“ *We have said that a statute is ambiguous when it is of doubtful meaning. Ex parte Alabama Public Service Commission, 268 Ala. 322, 106 So.2d 158 (1959). Ambiguity in this sense has been defined as whether “A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses.... ” State ex rel. Neelen v. Lucas, 24 Wis.2d 262, 267, 128 N.W.2d 425, 428 (1964).’
“S & S Distrib. Co. v. Town of New Hope, 334 So.2d 905, 907 (Ala.1976).
[[Image here]]
“The principles of statutory construction are summarized in State Farm Mutual Automobile Insurance Co. v. Motley, 909 So.2d 806 (Ala.2005):
“ ‘ . [T]he rule is well recognized that in. the construction of a statute, the legislative intent is to be determined from a consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found. The intent so deduced from the whole will prevail over that of a particular part considered separately.”
“ ‘Blair v. Greene, 246 Ala. 28, 30, 18 So.2d 688, 689 (1944).
“ * “It is well settled that when it is interpreting a statute this Court seeks to give effect, to the intent of the Legislature, as determined primarily from the language of.the statute itself. Beavers v. County of Walker, 645 So.2d 1365, 1376 (Ala.1994) (citing [McCall v.] McCall, 596 So.2d 2 (Ala.Civ.App.199[l])); Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala.1991). Also, our rules of ’ statutory construction direct us to look at the statute as a whole to determine the meaning of certain language that is, when viewed in isolation, susceptible to multiple reasonable interpretations. McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429 (Ala.1993).”
“ ‘Ex parte Alfa Fin. Corp., 762 So.2d 850, 853 (Ala.1999).
“ ‘ “ ‘When interpreting a statute, [a court] must read the statute as a whole because statutory language depends on context; [a court] will presume that the Legislature knew the meaning of words it used when it enacted the statute.’ ”
“ ‘Ex parte USX Corp., 881 So.2d 437, 442 (Ala.2003)(quoting Bean Dredg *810 ing, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003)).’
“909 So.2d at 813-14.
“ ‘[I]f the statute is ambiguous or uncertain, the Court may consider conditions that might arise under the provisions of the statute and examine the results that will flow from giving the language in question one particular meaning rather than another.’ Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala.1991).”
Hooks v. Coastal Stone Works, Inc., 164 So.3d 592, 597-98 (Ala.Civ.App.2014).
We first examine § 22-27-3(a)(4), which Brundidge and COBSWA contend prohibits the Coffee County Commission from providing certain solid-waste services within the Brundidge city limits. Section 22-27-3(a)(4) reads as follows:
“No county commission shall provide solid waste collection and disposal services within the corporate limits of a municipality without the express consent of the municipal governing body of such municipality nor shall any municipality provide solid waste collection and disposal services outside its corporate limits without the express consent of the county commission of the county in which it is situated.”
(Emphasis added.) Brundidge and COB-SWA contend that Brundidge never consented to the Coffee County Commission’s or BA’s operation of the Brundidge landfill. However, the actions of the Coffee County Commission do not offend the plain wording of the statute.
First, the record does not establish that the Coffee County Commission is providing solid-waste-collection and -disposal services within the Brundidge city limits. BA is operating the landfill. Although the Coffee County Commission may have provided the initial funding to BA for that entity to acquire the landfill, BA owns and operates the landfill, not the Coffee County Commission. There do not appear to be any legislative prohibitions against this arrangement. Second, neither the Coffee County Commission nor BA is engaged in “solid waste collection and disposal services.” Arguably, BA could be construed as being in the business of “disposal” of solid waste, considering that that term is defined in § 22-27-2(8), Ala.Code 1975, as “[t]he discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste into or on any land or water so that the waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including, but not limited to, ground waters.” Nevertheless, the legislature opted to utilize the conjunctive conjunction “and” in § 22-27-3(a)(4) to require local approval of a county’s “solid waste collection and disposal services” within a city’s boundaries. We note that our supreme court has stated that appellate courts are
“ ‘at liberty in ascertaining the intent of the legislature to construe the disjunctive conjunction “or” and the conjunctive conjunction “and” interchangeably.’ Ex parte Jordan, 592 So.2d 579, 581 (Ala. 1992).... However, ‘[wjhile there may be circumstances which call for an interpretation of the words “and” and “or,” ordinarily these words are not interchangeable.’ 1A Norman J. Singer, Sutherland Statutory Construction § 21.14 (5th ed.1993) (emphasis added). ‘The literal meaning of these terms should be followed unless it renders the statute inoperable or the meaning becomes questionable.’ Id. at 26 (Supp. 2000) (emphasis added). See also Kearney v. Ahmann, 264 N.W.2d 768, 769 (Iowa 1978) (‘When the word “or” is used it is presumed to be disjunctive unless a contrary legislative intent appears.’); Boron Oil Co. v. Cathedral *811 Found., Inc., 434 S.W.2d 640, 641 (Ky. 1968) (court should not interchange ‘or’ with ‘and,’ unless it is ‘obvious that the intent of the legislature would be thwarted if the change were not made’). To substitute by judicial construction the word ‘or’ for the word ‘and’ would significantly impact the scope of this statute.”
Ex parte Uniroyal Tire Co., 779 So.2d 227, 234 (Ala.2000). There is no evidence in the record showing that BA or the Coffee County Commission are engaging in solid-waste-eolleetion services within the Brun-didge city limits. Thus, since the record does not establish that the Coffee County Commission or BA have engaged in both solid-waste-collection and solid-waste-disposal services within the Brundidge city limits, we conclude that the Coffee County Commission and BA have not violated § 22-27-3(a)(4).
Brundidge and COBSWA also contend that, because there is no agreement between the Coffee County Commission and Brundidge, the operation of the landfill violates § 22-27-5(a). That section provides as follows:
“The county commission or municipality undertaking the responsibility for providing services to the public under this article may establish fees, charges and rates and may collect and disburse funds within cooperating areas or districts, inside or outside the corporate limits of municipalities or inside or outside of county boundaries, for the specific purpose of administering this article and providing and operating a solid waste program. Also, said county commission or public authority may enter into mutual agreements or contracts with the government bodies of other counties, municipalities, corporations or individuals, where deemed to be mutually economical and feasible, to jointly or individually collect, haul arid/or dispose of solid wastes generated within the cooperating area.”
Brundidge and COBSWA contend that the Coffee County Commission could not be legally involved in the arrangement concerning the landfill, which is outside its jurisdictional boundaries, and could not engage in solid-waste-disposal services within the Brundidge city limits because it did not do so with Brundidge’s cooperation. Section 22-27-5(a), however, does not mandate cooperation between governing bodies. Rather, the statute states that governing bodies “may” enter into agreements or contracts with each other. “Ordinarily, the use of the word ‘may1 indicates a discretionary or permissive act, rather than a mandatory act.” Ex parte Mobile Cty. Bd. of Sch. Comm’rs, 61 So.3d 292, 294 (Ala.Civ.App.2010). Section 22-27-5(a) provides no basis to invalidate Coffee County’s resolutions or to reverse the trial court’s judgment in the declaratory-judgment action.
Brundidge and COBSWA also cite § 22-27-47, which authorizes counties and municipalities to have a solid-waste-management plan, and § 22-27-48(a), which allows the governing body of a county or municipality to implement a solid-waste plan and to approve or disapprove of the provision of solid-waste services within the applicable jurisdiction. They contend that Brundidge has not consented to BA’s operation of the Brundidge landfill and that, accordingly, Coffee County and BA lack the power to provide solid-waste-disposal services inside the Brundidge city limits. Section § 22-27-48(a) states, in pertinent part:
“[T]he governing body of a county or municipality has a responsibility for and the authority to assure the proper management of solid wastes generated within its jurisdiction in accord with its solid *812 ,;waste management plan. A governing body may assign territories and approve or disapprove disposal sites in its jurisdiction in accord with the plan approved for its. jurisdiction. . Such approval or disapproval of services or activities described in the local plan shall be in addition to any other approvals required from other regulatory authorities and shall be made prior to any other approvals necessary for the provision of such services, the development of a proposed facility or the modification of permits for ' existing facilities.”
The first. sentence of § 22-27-48(a) provides Brundidge with the authority to manage solid waste generated within the Brundidge city limits. Brundidge’s solid-waste-management plan states that the solid waste generated within the Brun-didge city limits is to be deposited in the Brundidge landfill. Brundidge and COB-SWA argue that the Coffee County Commission and BA have frustrated Brun-didge’s ability to enforce its solid-waste-management plan because the solid waste generated in the City is not capable of being disposed of at the Brundidge landfill pursuant to the plan because BA has operated the landfill at a minimal level. We note; however, that before BA’s purchase of the landfill from the bankruptcy trustee, Brundidge, itself, was unable to fulfill the teims of its solid-waste plan and that solid waste generated within the Brundidge city limits was not being deposited in the Brun-didge landfill because the prior owner had closed the landfill and had filed bankruptcy proceedings. BA contends that its operation of the landfill has been hindered by the litigation with Brundidge and COB-SWA and has precluded it from entering into contracts with various entities for the disposal of solid waste. Furthermore, the second sentence of § 22-27-48(a) authorizes a governing body to “assign territories and approve or disapprove disposal sites in its jurisdiction in accord with the plan approved for its jurisdiction.” According to its solid-waste-management plan, Brun-didge has approved of the location of the Brundidge landfill. ■ Therefore, the judgment in the declaratory-judgment action is not subject to reversal on this basis.
Brundidge and COB SWA also contend that, pursuant to the third sentence of § 22-27-48(a), they have not approved or disapproved of services or activities offered by BA in relation to the Brundidge landfill. But this sentence, read plainly, does not require local approval of all solid-waste services that occur within the Brun-didge city limits. ’ Rather, by commencing the third sentence of § 22-27-48(a) with the term “such,” the legislature intended that sentence to refer to the previous two sentences of the statute. “Such is properly used as an adjective when reference has previously been made to a category of persons or things.... [S]uch is a DEICTIC TERM that must refer to a clear antecedent.” Bryan A. Garner, Gamer’s Dictionary of Legal Usage 859 (3d ed.2011). Therefore, we conclude that the phrase “[sjuch approval or disapproval of services or activities described in the local plan” relates to Brundidge’s “responsibility for and the authority to assure the proper management of solid wastes generated within its jurisdiction in accord with its solid waste management plan” and to Brundidge’s power to “assign territories and approve or disapprove disposal sites in its jurisdiction in accord with the plan approved for its jurisdiction.” The third sentence of § 22-27-48(a) does not provide a governing body with carte blanche control over all solid-waste activities that may occur within its jurisdiction. Additionally, we note that the third sentence of § 22-27~48(a) merely states that approval or disapproval in the local plan is in addition to the approvals required by other regula *813 tory bodies, i.e., ADEM. In this case, ADEM had previously issued a permit for the Brundidge landfill.
Brundidge and COBSWA contend that, under this court’s decision in Alabama Disposal Solutions, supra, the Solid Wastes and Recyclable Materials Management Act limits counties and municipalities to acting within their boundaries. Brun-didge and COBSWA cite Alabama Disposal Solutions for the proposition that counties “are not given carte blanche authority to manage solid-waste decisions, but must follow the statutory procedures set out in §§ 22-27-47 and 22-27-48” and that “§ 22-27-47 limits [a county’s] authority to regulate solid waste to its [boundaries].” 837 So.2d at 302. However, the evidence presented in support of the motions for a summary judgment does not support a conclusion that the Coffee County Commission is regulating solid waste at the Brundidge landfill. Rather, the Coffee County Commission provided the funding necessary for BA to acquire the Brundidge landfill so that the landfill remained open as a viable option for disposal of solid waste. Stated otherwise, the Coffee County Commission presented substantial evidence indicating that the funds provided to BA to acquire and reopen the Brundidge landfill “serve[d] a valid and sufficient public purpose.” Art. IV., § 94.01(c)(1), Ala. Const. 1901 (Off. Recomp.).
Brundidge and COBSWA contend that Coffee County cannot do through the form of acquisition what it is barred by statute from doing in substance. Brundidge and COBSWA contend that Alabama law looks through the form of entities to the substance of the transactions to hold the real controlling entities liable for violations of the law. See Opinion of the Justices No. SM, 665 So,2d 1357, 1363 (Ala.1995). Brundidge and COBSWA contend that BA is a “sham” entity that is controlled and funded by the Coffee County Commission. They contend that they were injured because, after BA began operating the Brun-didge landfill, they did not receive any fees for the operation of the landfill. They contend that they presented substantial evidence to show that BA was a sham organization that was controlled by the Coffee County Commission and that the Coffee County Commission used to violate Brundidge’s statutory right to withhold approval and consent of the performance of solid-waste-disposal services within the Brundidge city limits. As explained in detail above, however, neither the Coffee County Commission nor BA violated Alabama law relating to the acquisition of the Brundidge landfill. The Coffee County Commission, pursuant to § 94.01, Ala. Const. 1901 (Off. Recomp.), lawfully offered its credit to BA for a valid and sufficient public purpose.
III. ADEM’s Transfer of the Permit
Brundidge and COBSWA next contend that ADEM’s transfer of Permit No. 55-07 to BA without Brundidge’s approval is barred by § 22-27-48(a) because, they contend, that section requires local-government approval of the provision of solid-waste services and activities “prior to” the modification of a permit and that Brun-didge provided no such approval before ADEM transferred the permit. ADEM, however, contends that § 22-27-48(a) does not require local-government approval of a transfer of a permit when there has been no modification of the operation of the landfill.
Section 22-27-48(a) states in pertinent part:
“[Local government] approval or disapproval of services or activities described in the local plan shall be in addition to any other approvals required from other regulatory authorities and shall be made prior to any other approvals necessary *814 for the provision of such services, the development of a proposed facility or the modification of permits for existing facilities. [ADEM] may not consider an application for a new or modified permit for a facility unless such application has received approval by the affected unit of local government having an approved plan.
“In determining whether to recommend approval of the proposed issuance of or modification of a new or existing solid waste management site [permit], the governing body shall consider....
“(1) The consistency of the proposal with the jurisdiction’s solid waste management need as identified in its plan;
[[Image here]]
[[Image here]]
“Any determination by the local governing body of the proposed issuance of or modification of a permit for a new or existing solid waste management site or the proposal to contract for any services described in the solid waste management plan, shall be made in a public meeting only after public notice of such application or proposal and an opportunity for public comment is provided.”
The statute does not specifically address transfers of permits from one entity to another; instead, it refers to approval or disapproval of services or activities and of new and modified permits for a facility.
Furthermore, the provisions of the Alabama Administrative Code applicable to landfill permits supports ADEM’s argument that a transfer of a permit is different from a modification of a permit. Rule 335-13-5-.06, Ala. Admin Code (ADEM), pertaining to a modification of a permit, reads, in pertinent part:
“[ADEM] may modify any permit after receiving a satisfactory application that is found in compliance with ADEM rules and regulations.
“(1) Major Modifications.
“(a) Permit modification shall be requested utilizing forms designated by [ADEM] when the permittee proposes to modify its operation in any of the following ways:
“1. There is any change in the permitted service area. The Director may temporarily or on a one-time basis waive permit modification requirements on a case-by-case basis for special waste or other solid waste if it is demonstrated that a disposal alternative is needed immediately to protect health or the environment.
“2. Convert an industrial landfill (ILF) or construction/demolition landfill (C/DLF) to a municipal solid waste landfill (MSWLF) or convert a construction/demolition landfill (C/ DLF) to an industrial landfill (ILF). “3. Addition of a liner and leachate collection system or any design change in existing permitted liner and leachate collection system.
“4. Addition of disposal acreage inside the permitted perimeter where design plans have not been previously submitted.
“(b) Modifications required under this paragraph are subject to the provisions of Rules 335-13-5-.03 and 335-13-5-.04, which require a public notice and may require a public hearing.
“(2) Minor Modifications.
“(a) A permit modification shall be required, utilizing forms designated by [ADEM], when the permittee proposes to modify its operations or design in any of the following ways:
“1. Addition of a waste stream to a ILF or C/DLF.
*815 “2. Addition or relocation of a monitoring well.
“3. Addition of sedimentation basins.
“4. Any change in the permitted final fill elevations.
“5. The average daily volume of waste specified by the permit for a landfill unit is proposed to be exceeded, or is exceeded for two or more consecutive reporting quarters, by 20 percent, or 100 tons/day, whichever is less.”
Rule 335-13-5-.07, Ala. Admin Code (ADEM), states as follows pertaining to transfers of permits:
“Permits are not transferable except as follows:
“(1) A notification must be submitted to and approved by [ADEM] prior to any proposed transfer from one person or company to another or name change of any permitted facility.
“(a) The notification must be submitted to [ADEM] at least 30 days prior to the proposed transfer.
“(b) Information regarding the transfer must be submitted on form(s) designated by [ADEM].”
The transfer of Permit No. 55-07, pertaining to the Brundidge Landfill, from the bankruptcy trustee to BA did not authorize a change to the landfill identified in Rule 335-13-5-.06; thus, pursuant to the administrative regulations, there was not a request to modify the permit. Rather, the transfer merely changed the name of the entity to whom Permit No. 55-07 was issued.
Furthermore, testimony indicates that ADEM’s historic practice is consistent with ADEM’s interpretation of § 22-27-48(a) in this case and that, for 20 years, ADEM has classified landfill-permit transfers differently than landfill-permit modifications and has never required local-government approval for a transfer.
As this court has previously held:
“We recognize that ‘[[Interpretations of an act by the administrative agency charged with its enforcement, though not conclusive, are to be given great weight by the reviewing court.’ Hulcher v. Taunton, 388 So.2d 1203, 1206 (Ala.1980). Similarly, ‘an agency’s interpretation of its own regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.’ Ferlisi v. Alabama Medicaid Agency, 481 So.2d 400, 403 (Ala.Civ.App.1985). However, ‘[a]n administrative agency cannot usurp legislative powers or contravene a statute.’ Ex parte Jones Mfg. Co., 589 So.2d 208, 210 (Ala.1991).”
Daniel Sr. Living of Inverness I, LLC v. STV One Nineteen Sr. Living, LLC, 161 So.3d 187, 191 (Ala.Civ.App.2012).
We conclude that there is not a conflict between § 22-27-48(a) and the pertinent regulations, that ADEM’s interpretation of the statute is not contrary to the legislative intent, that ADEM’s interpretation of its own regulations is reasonable, and that Brundidge’s objection to ADEM’s practice of allowing permits to be transferred without local-government approval is not applicable to the current case where a host-government agreement was voided by a bankruptcy court.

Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.
2140325—AFFIRMED.
2140342—AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. “Chief among these elements [composing the concept of justiciability] is the requirement that a plaintiff have ‘standing to invoke the power of the court in his behalf.' ” Ex parte State ex rel. James, 711 So.2d 952, 960 (Ala.1998)(quoting Ex parte Izundu, 568 So.2d 771, 772 (Ala. 1990)).

. The Coffee County Commission and BA contend that Brundidge and COBSWA failed to raise in the trial court arguments relating to the alleged violation of the Solid Wastes and Recyclable Materials Management Act. A review of Brundidge and COBSWA's brief in support of their motion for a summary judgment shows that they primarily argued that the Coffee County Commission and BA violated the provisions of the Alabama Limited Self-Governance Act, Brundidge and COB-SWA appear to have abandoned that argu *809 ment on appeal, but a review of the entire record in both appeals shows that arguments concerning the Solid Wastes and Recyclable Materials Management Act were presented to the trial court.